1  PETER H. MASON (BAR NO. 71839)
   peter.mason@nortonrosefulbright.com
2  TODD M. SORRELL (BAR NO. 175143)
   todd.sorrell@nortonrosefulbright.com
3  MICHELLE L. MELLO (BAR NO. 288081)
   michelle.mello@nortonrosefulbright.com
4  **NORTON ROSE FULBRIGHT US LLP**
   555 South Flower Street
5  Forty-First Floor
   Los Angeles, California 90071
6  Telephone:    (213) 892-9200
   Facsimile:    (213) 892-9494
7
   JAMES McMANIS (Bar No. 40958)
8  GREGORY WARD (Bar No. 79427)
   RUBY H. KAZI (Bar No. 243872)
9  rkazi@mcmanislaw.com
   TYLER ATKINSON (Bar No. 257997)
10 tatkinson@mcmanislaw.com
   **McMANIS FAULKNER**
11 a Professional Corporation
   50 West San Fernando Street, 10th Floor
12 San Jose, California 95113
   Telephone:    (408) 279-8700
13 Facsimile:    (408) 279-3244
14 Attorneys for Defendants
   FELD ENTERTAINMENT, INC. AND LORENZO
15 DEL MORAL

16            IN THE UNITED STATES DISTRICT COURT

17           FOR THE NORTHERN DISTRICT OF CALIFORNIA

18                      SAN JOSE DIVISION

| | |
|---|---|
| 19  JOSEPH CUVIELLO, Individually, | Case No. 5:13-cv-03135-LHK |
| 20          Plaintiff, | Related to Case Nos: 5:12-cv-04233-LHK and 5:13-cv-00233-LHK |
| 21          v. | **NOTICE OF MOTION AND MOTION OF DEFENDANTS FOR SUMMARY** |
| 22  FELD ENTERTAINMENT INC., (dba RINGLING BROS. AND BARNUM & | **JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT;** |
| 23  BAILEY CIRCUS), RINGLING BROS. CIRCUS EMPLOYEE LORENZO | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 24  DELMORAL, GEOFF TAYLOR and DOES 1 through 10, Jointly and Severally, | **[FRCP 56]** |
| 25 | |
| 26          Defendants. | Date:   March 26, 2015 Time:   1:30 p.m. Ctrm:  8, 4th Floor |
| 27 | Judge: The Hon. Lucy H. Koh |
| 28 | Complaint Filed: 07/08/13 |

DOCUMENT PREPARED
ON RECYCLED PAPER

TO PLAINTIFF:

PLEASE TAKE NOTICE that on March 26, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 280 South First Street, Courtroom 8, 4th Floor, San Jose, California, defendants Feld Entertainment, Inc., dba Ringling Bros. and Barnum & Bailey Circus, and Lorenzo Del Moral will move for summary judgment in connection with all claims asserted in Plaintiff Joseph Cuviello's ("Plaintiff") Third Amended Complaint based upon the three separate incidents that form the basis of Plaintiff's lawsuit. In the alternative, Defendants move for partial summary judgment as follows:

1) That Defendants are entitled to judgment in their favor on all claims related to the stick and bottle incident in Fresno, California on July 8, 2012 (the "Fresno Incident");

2) That Defendants are entitled to judgment in their favor on all claims related to the animal walk in Oakland, California on August 7, 2012 (the "Oakland Incident"); and/or

3) That Defendants are entitled to judgment in their favor on all claims related to the videotaping incident in San Jose, California on August 19, 2012 (the "San Jose Incident").

This motion will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Geoff Taylor and Peter H. Mason with exhibits or other materials attached thereto, the Request for Judicial Notice served and filed herewith, the papers and records on file herein, and on such oral and documentary evidence as may be presented at the hearing on the motion.

PETER H. MASON
TODD M. SORRELL
MICHELLE L. MELLO
**NORTON ROSE FULBRIGHT US LLP**

and

RUBY H. KAZI
TYLER ATKINSON
**McMANIS FAULKNER**

Dated: February 19, 2015        By___/s/ Peter H. Mason_____
                                         PETER H. MASON
                                         Attorneys for Defendants
                                         FELD ENTERTAINMENT INC. AND
                                         LORENZO DEL MORAL

DOCUMENT PREPARED
ON RECYCLED PAPER

- 1 -

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS .................................................................................. 2

    A.      The Fresno Incident ................................................................................ 2

    B.      The Oakland Incident ............................................................................. 4

    C.      The San Jose Incident ............................................................................ 7

III.    LEGAL STANDARD ......................................................................................... 10

IV.     LEGAL ARGUMENT ........................................................................................ 11

    A.      Plaintiff's Claims Related to the Fresno Incident Should Be Dismissed .............. 11

    B.      Plaintiff's Claims Related to the Oakland Incident Should be Dismissed ............ 12

    C.      Plaintiff's Claim Related to the San Jose Incident Should be Dismissed ............ 15

V.      PLAINTIFF'S DISCOVERY MISCONDUCT COMPELS THE GRANTING OF SUMMARY JUDGMENT ........................................................ 18

VI.     CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ...................................................................................................10

*Austin B. v. Escondido Union Sch. Dist.*,
149 Cal. App. 4th 860 (2007) ..............................................................................11, 15

*Avina v. United States*,
681 F.3d 1127 (9th Cir. 2012)..............................................................................11, 12

*Barouh v. Haberman*,
26 Cal. App. 4th 40 (1994) .......................................................................................12

*Bolbol v. Feld Entm't, Inc.*,
2013 U.S. Dist. Lexis 9800 (N. D. Cal. 2013) ..................................................10, 14

*Campbell v. Feld Entertainment, Inc., et al.*,
Case Nos. 12-cv-04233-LHK and 12-cv-00233 .......................................1, 2, 6, 14, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................................10

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 774-75 (2002) ................................................................................17

*Frio v. Super. Ct.*,
203 Cal. App. 3d 1480 (1988)....................................................................................18

*Kearney v. Salomon Smith Barney*,
39 Cal. 4th 95 (2006) ................................................................................................18

*Knapps v. City of Oakland*,
647 F. Supp. 2d 1129 (N.D. Cal. 2004) ....................................................................11

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) ....................................................................................18

*OSJ PEP Tenn. LLC v. Harris*,
No. CV 14-03741 DDP MANX, 2014 WL 4988070, at *5 (C.D. Cal. Oct. 7,
2014) ....................................................................................................................11, 13

*Payne v. Exxon Corp.*,
121 F.3d 503 (9th Cir. 1997.).....................................................................................18

*People v. Drennan*,
    84 Cal. App. 4th 1349 (2000) ........................................................................16, 17

*Roberts v. Wyndham Int'l.*,
    2012 WL 6001459 (N.D. Cal., Nov. 30, 2012).........................................................18

*Thomas v. Costco Wholesale Corp.*,
    2014 WL 819396 (C.D. Cal. 2014)......................................................................16

*Venegas v. Cnty of L.A.*,
    32 Cal. 4th 820 (2004) .................................................................................11

*Weiner v. ARS Nat'l. Servs*,
    887 F. Supp. 2d 1029 (S.D. Cal. 2012) ................................................................18

**California Statutes**

Civil Code §43 ...............................................................................................14, 15

Civil Code §51.7 (Ralph Act) ...........................................................2, 4, 11, 12, 13, 14

Civil Code §52.1 (Bane Act)............................................................2, 4, 11, 12, 14, 15

Civil Code §1708 ..................................................................................................14

Penal Code §240 ............................................................................................14, 15

Penal Code §632(a).........................................................................7, 15, 16, 17, 18

Penal Code §647c........................................................................................14, 15

**Other Authorities**

Fed. R. Civ. P. 56(A) ............................................................................................10

Judicial Council of California Civil Jury Instructions ("CACI") No. 1809...................................16

DOCUMENT PREPARED
ON RECYCLED PAPER

# I.   **INTRODUCTION**

This lawsuit is the latest of many by Plaintiff Joseph Cuviello ("Plaintiff") and his animal activist colleagues, joined together in the four (4) member organization Humanity Through Education ("HTE"), to use the judicial system to achieve their goal of ending the use of live animal acts in circus performances.[1]  Having lost an earlier case he brought against defendant Feld Entertainment Inc. ("FEI"), Plaintiff asserts in this case, through his Third Amended Complaint ("TAC"), a variety of legal theories based upon three (3) separate events that occurred in 2012.   However, as detailed below, the undisputed facts involving each of these incidents establish that Plaintiff cannot satisfy at least one of the essential elements of each of his claims.

Plaintiff asserts that he was victimized by a bottle and stick throwing incident in Fresno in July, 2012.  (The "Fresno Incident.")  The same claim made by fellow HTE member Mark Ennis ("Ennis") was summarily dismissed by this Court in the *Campbell* Summary Judgment Order. The result for Plaintiff should be identical here, because Plaintiff, like Ennis, was not the subject of any violence or threats of violence in connection with this event, and he suffered no physical injury or damage to his property resulting from this incident.

Plaintiff also alleges that he was physically battered and threatened with violence in connection with the FEI animal walk in Oakland on August 7, 2012. (The "Oakland Incident.") However, the evidence (including video recordings of the incident) establishes that it was Plaintiff who initiated and provoked any physical contact with FEI personnel during the animal walk, and it was Plaintiff who engaged in intimidation and verbal abuse during this event. Further, Plaintiff has admitted he suffered no physical or emotional injury, nor did he incur any damage to his property, arising out of this incident.

Finally, Plaintiff claims that while standing outside the San Jose Arena on August 19, 2012, a videographer retained on behalf of FEI recorded illegally a purported private conversation

---

[1] See "Order Denying Plaintiffs' Motion for Partial Summary Judgment, and Granting in Part and Denying in Part Defendants' Motion for Summary Judgment" in *Campbell v. Feld Entertainment, Inc., et al.*, Case Nos. 12-cv-04233-LHK and 12-cv-00233, dated December 15, 2014, (ECF Docket No. 233, pg. 2), attached to the accompanying Request for Judicial Notice ("RJN") as Exhibit 1 (the "*Campbell* Summary Judgment Order").

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff was engaged in with Ennis. (The "San Jose Incident.") The undisputed evidence is that there was **no** actual recording that captured the content of a communication between Plaintiff and Ennis. Further, given both the physical context in which the recording took place, as well as the fact that Plaintiff cannot recall what, if anything, was said between himself and Ennis, there is no objective basis upon which to conclude that Plaintiff is entitled to any presumption that the conversation in question was private. This claim thus fails as a matter of law.

Due to the undisputed factual record, Plaintiff cannot prevail at trial based upon the various legal theories he asserts as to the three incidents at issue. Accordingly, Defendants FEI and Lorenzo Del Moral (collectively "Defendants") are entitled to summary judgment in their favor. Alternatively, and at the very least, Defendants are entitled to partial summary judgment in their favor as to each incident that is alleged in the TAC.

## II.   STATEMENT OF FACTS

The core allegations and pertinent undisputed material facts as to each of the three incidents at issue in the TAC are as follows:

### A.   The Fresno Incident

Based upon the same factual allegations as made by Ennis in his related lawsuit, Plaintiff asserts that on July 8, 2012, he and Ennis were in Fresno at the Selland Arena for the purpose of videotaping the treatment of animals by FEI's Ringling Bros. and Barnum & Bailey Circus ("Ringling Bros"). (TAC ¶32.)[2] It is alleged that Plaintiff and Ennis were standing on a public sidewalk and videotaping "over a wall" into the backstage area of the arena when a plastic water bottle and two wooden sticks were thrown over the wall. Plaintiff concedes in the TAC that the thrown items did not strike him or his camera. Id. Plaintiff asserts causes of action for Assault (First Cause of Action), Violation of Civil Code §51.7 – The Ralph Act (Third Cause of Action) and Violation of Civil Code §52.1 – The Bane Act (Fourth Cause of Action).

At his deposition Plaintiff admitted that at the time the items were thrown, Plaintiff could

_____

[2] As noted, the Fresno Incident in the related *Campbell* litigation was addressed and adjudicated in FEI's favor in the *Campbell* Summary Judgment Order. (See RJN, Ex. 1, pgs. 5, 16, 17, 26, 29, 31, 34 and 35.)

DOCUMENT PREPARED
ON RECYCLED PAPER

not see the people on the other side of the wall in the backstage portion of the arena. (Cuviello Depo., pg. 138: 11-14.)[3]  Neither could the people backstage see Plaintiff. (Cuviello Depo., pgs. 138: 15-25, 139: 1.)  Plaintiff did not hear any instructions given to the people backstage to throw the items at issue. (Cuviello Depo., pgs. 138: 7-10, 161: 14-21.)

The first item thrown over the wall was an empty plastic water bottle. (Cuviello Depo., pg. 140: 2-10.)  The bottle flew over the wall, past Plaintiff's camera, and came to rest in the public street beyond the wall. (Cuviello Depo., pgs. 141: 17-25, 142: 1-2.)  The water bottle did not hit Plaintiff or his camera. (Cuviello Depo., pg. 142: 15-18.)

The second item thrown over the wall was a wooden stick. (Cuviello Depo., pg. 142: 19-23.)  Plaintiff was standing next to the wall when this stick was thrown. (Cuviello Depo., pg. 145: 6-14.)  Plaintiff saw the stick fly over the wall  and land in the street. (Cuviello Depo., pg. 147: 6-10.)   Like the plastic water bottle, the stick did not hit Plaintiff, nor did it strike any of his property, including his camera. (Cuviello Depo., pg. 150: 1-20.) [4]

Plaintiff testified that he has no knowledge regarding the intent of those people who had thrown the stick and water bottle. (Cuviello Depo., pg. 148: 2-7.)  While Plaintiff was "a little nervous" following the incident (Cuviello Depo., pg. 153: 12-15), he remained at the Selland Arena, he did not leave the site early out of concern for his health and safety, he did not report the incident to the police or any security personnel at the arena, and he continued his videotaping over the wall. (Cuviello Depo., pgs. 155: 1-25, 156: 1-3, 164: 4-9.)

In sum, the evidence regarding the Fresno Incident, taken exclusively from Plaintiff's own deposition testimony, establishes that: 1) Plaintiff was not the target of the thrown items - - the alleged perpetrators could not even see Plaintiff behind the backstage wall; 2) there were no threats or acts of intimidation that preceded the incident; 3) Plaintiff was not struck or injured by the purported thrown items, nor was his property damaged; 4) Plaintiff continued his activity (videotaping) immediately following the incident, without cessation; and 5) Plaintiff did not

---

[3] True and correct portions of Plaintiff's deposition are attached as Exhibit "A" to the accompanying Declaration of Peter H. Mason ("Mason Decl.").

[4] A second wooden stick was purportedly thrown over the wall.  Plaintiff was not in the vicinity at that time and was told about the second stick by Ennis. (Cuviello Depo., pg. 143: 7-22.)

DOCUMENT PREPARED
ON RECYCLED PAPER

report this incident to the police or arena security.  Accordingly, Defendants should be granted summary judgment on all claims related to the Fresno Incident.

### B.  The Oakland Incident

Plaintiff has asserted four claims based in part on the events surrounding the "animal walk" in Oakland on August 7, 2012: 1) Battery (Second Cause of Action); 2) Violation of the Ralph Act (Third Cause of Action; 3) Violation of the Bane Act (Fourth Cause of Action); and 4) Violation of City of Oakland ordinances (Sixth Cause of Action).  Plaintiff alleges that FEI personnel repeatedly pushed the rope used during the animal walk, as well as their bodies, against Plaintiff, battering Plaintiff and preventing him from free use of the sidewalks and his videotaping activities. (TAC ¶38.)  Plaintiff also asserts that he was "slammed" into by Defendant Del Moral ("Del Moral") during the animal walk. (TAC ¶39.)  Here again, the facts support a much different version of these events.

Plaintiff testified at his deposition, which is confirmed by the videotape of Plaintiff's activities during the 2012 Oakland animal walk, that he was able to follow along with the animal walk and engage in videotaping for the entire route of the walk.  Starting at the point where the animals were unloaded from the train cars at the intersection of 85th Street and Railroad in Oakland, Plaintiff was unfettered in his attempt to videotape the animal walk. (Cuviello Depo., pgs. 306: 20-22, 309: 24-25, 310: 1-5.)  Plaintiff's videotaping continued without incident from the corner of 85th and Railroad to the intersection of 85th at Baldwin Street. (Cuviello Depo., pg. 314: 7-20.)  FEI personnel held a rope along this entire segment of the animal walk. (Cuviello Depo., pg. 315: 11-17.)[5]  As the animal walk proceeded up Baldwin Street there were no incidents or confrontations between Plaintiff and the FEI rope escorts. (Cuviello Depo., pgs. 315: 25, 316: 1-11.)  Neither were there any incidents that occurred on the animal walk as it proceeded up Baldwin Street towards the Oakland Coliseum complex, until a guardrail was encountered on Baldwin near Hegenberger Road. (Cuviello Depo., pgs 319: 16-20, 321: 15-20.)  As Plaintiff

---

[5] Plaintiff agrees that it is appropriate for there to be a "buffer zone" between the public and the animals during an animal walk, and that the ropes can serve a "legitimate purpose" of establishing that zone. (Cuviello Depo., pgs. 322: 22-25, 323: 1-5.)

DOCUMENT PREPARED
ON RECYCLED PAPER

1  testified "[a]s long as there's a paved sidewalk, no problem." (Cuviello Depo., pg. 317: 7-8.)

2  Clearly, this was not a situation of constant and continual confrontation between Plaintiff and the

3  FEI rope escorts.

4      Plaintiff asserts three distinct occurrences along the animal walk route as the basis for his

5  claim. The first two incidents occurred in close proximity as the animal walk proceeded up

6  Baldwin Street from the beginning of the guardrail until right before the cul-de-sac portion of

7  Baldwin.[6] In the first instance, Plaintiff testified that one of FEI's rope escorts, Henry Higinio,

8  pushed the rope across his body while Plaintiff was on the curb. (Cuviello Depo., pgs. 319: 21-25,

9  320: 1-9.) Contrary to the allegations of the TAC, there was no body-to-body contact between

10  Plaintiff and FEI personnel in this instance. (Cuviello Depo., pg. 324: 1-13.) Plaintiff suffered no

11  physical pain or injury from this encounter with the rope, which lasted a matter of seconds.

12  (Cuviello Depo., pgs. 325: 1-12, 328: 11-18.) According to Plaintiff, the second rope touching

13  incident also involved Henry Higinio, and occurred just before the cul-de-sac area on Baldwin

14  Street, while Plaintiff was walking on the curb. (Cuviello Depo., pg. 326: 6-18.)

15      Similar to the first rope incident of a few moments earlier, Plaintiff asserts that the rope

16  was on him for a matter of seconds and he pushed the rope off. (Cuviello Depo., Pg. 328: 11-15.)

17  As with the first "rope touching" incident, there was no body-to-body contact with FEI personnel

18  and Plaintiff suffered no physical pain or injury from the rope. (Cuviello Depo., pgs. 328: 19-25,

19  341: 11-17.)

20      The videotape of the 2012 Oakland animal walk shows Plaintiff himself forcing the issue

21  when the space between the rope escorts and Plaintiff narrowed due to the presence of the

22  guardrail and the disappearance of a paved sidewalk. This was not a situation where the rope

23  escorts provoked contact. To the contrary, if any provocation occurred, it was initiated by

24  Plaintiff at a point in the animal walk route where Plaintiff and the escorts were brought closer

25  together due to changes in sidewalk conditions. (See Ex. B attached to the Declaration of Geoff

26  Taylor ("Taylor Decl."), excerpts 7:26 to 7:56 and 13:15 to 13:25; Exhs. A and B attached to the

27

28
_____

[6] Pictures of the relevant portions of Baldwin Street are attached as Exhibits "B" and "C" to the Mason Decl.

DOCUMENT PREPARED
ON RECYCLED PAPER

Declaration of David Bailey, excepts 00:18 to 00:43 and 00:48 to 00:58.)  Plaintiff testified that

there were no problems as long as there was a paved sidewalk. (Cuviello Depo., pg. 317: 7-8.)

   The next, and final, alleged incident on the Oakland animal walk occurred when the

animal walk passed through the Baldwin Street gate as it proceeded onto the Oakland Coliseum

property.  (Cuviello Depo., pg. 330: 8-18.)[7]  Plaintiff asserts that while still following the animal

walk, after the rope incidents described above, he turned around to videotape an interaction

between Deniz Bolbol and Del Moral. (Cuviello Depo., pg. 329: 1-10.)  Plaintiff claims that,

while he was standing still, Del Moral slammed his body into Plaintiff. (Cuviello Depo., pgs. 352:

23-25, 353: 1-8, 23-25.)  Plaintiff asserts he jumped back, but did not fall over, from the contact

with Del Moral, and then he pushed back at Del Moral. (Cuviello Depo., pgs. 354: 1-5, 355: 12-

13, 356: 1-11.)  Plaintiff did not suffer any physical injuries and he did not seek any medical

assistance for any physical or emotional harm resulting from his encounter with Del Moral.

(Cuviello Depo., pg. 357: 3-25.)

   Here again, the videotape of the encounter with Del Moral shows what actually occurred.

Upon hearing Bolbol's loud and offensive interchange with the animal walk escorts, Plaintiff

turned and moved quickly in Bolbol's direction.  It was Plaintiff, not Del Moral, that initiated the

contact.  And it was Plaintiff, not Del Moral or the other animal walk escorts, who cut loose with

a stream of expletives.   Thus, the videotape shows that the instigator and provocateur in the

encounter with Del Moral was Plaintiff.   Further, the videotape shows that the contact was

instantaneous, lasting but a moment, and de minimus.  (See Ex. B to Taylor Decl., excerpts 13:30

to 14:10; Ex. G to Mason Decl., excerpts 16:45 to 17:00.)

   Finally, in support of his separate claim based upon a purported violation of City of

Oakland ordinances, Plaintiff asserts that FEI did not have a permit for the 2012 Oakland animal

walk.  However, the City of Oakland did approve and issue a permit for the animal walk, on a

form supplied to FEI by City officials. [8]  Further, the Oakland Police Department supplied police

[7] For a picture of this area, see Exhibit "D" attached to the Mason Decl.

[8] The Court previously found in the *Campbell* Summary Judgment Order that FEI had obtained a
special event permit for the 2012 Oakland animal walk. (RJN, Ex. 1, pg. 24.)

escorts and traffic control services for the August 7, 2012 animal walk. (Bailey Depo., pgs. 49: 20-25, 50: 1-15, 63: 20-25, 64: 1-19, 86: 7-25, 87: 1-21; Exhibit "E" to Mason Decl.)[9]  In any event, Plaintiff admitted that he could not think of any way in which he was harmed based upon the (incorrect) assumption that FEI did not have a permit for the animal walk. (Cuviello Depo., pg. 37: 5-25.)

C.    **The San Jose Incident**

The third incident of the trio alleged in the TAC is Plaintiff's assertion that FEI, through one of its alleged representatives, Geoff Taylor,[10] illegally recorded a private conversation between himself and Ennis on August 19, 2012, in purported violation of California Penal Code §632(a). (TAC ¶¶45-48.)  Plaintiff asserts a single cause of action based upon a violation of the Penal Code (Fifth Cause of Action).  Plaintiff claims that on this date he was standing on the public sidewalk, next to the loading dock at the San Jose Arena, videotaping over the loading dock wall the treatment by Ringling Bros. of its animals.  Plaintiff asserts that he and his colleagues have engaged in this conduct in San Jose "for years." (TAC ¶45.)  Plaintiff alleges that while he was video recording over the loading dock wall, videographers were videotaping Plaintiff and his colleagues as they stood on the public street. (TAC ¶48.)

Plaintiff claims that at one point he stopped his videotaping and approached Ennis to have a private conversation, and that he leaned in "close to the ear" of Ennis and began talking to him. Plaintiff alleges that during his "private conversation" he sensed someone was behind him, and he turned to discover that Geoff Taylor had "moved right up behind" Plaintiff, put his camera "right up near the back of his head," and recorded Plaintiff's conversation with Ennis without Plaintiff's consent. (TAC ¶48.)  These allegations are the basis for Plaintiff's claim that FEI (and Taylor) made an illegal recording of a private conversation in violation of the California Penal Code.  The evidence, however, does not support the allegations.

At deposition, Plaintiff testified that starting on August 15, 2012, Plaintiff was aware that

---

[9] Excerpts of the Deposition of David Bailey are attached to the Mason Decl. as Ex. F.
[10] Geoff Taylor was dismissed by the Court on January 12, 2015, ruling that he was misjoined as a non-diverse, non-indispensable party. (ECF Docket No. 103.)

DOCUMENT PREPARED
ON RECYCLED PAPER

the FEI videographers were recording Plaintiff and his colleagues in San Jose on a regular and continual basis. As Plaintiff put it, "they were recording me a lot." (Cuviello Depo., pg. 86: 7-25.) On August 19, 2012, Plaintiff knew that the videographers were present immediately before his purported conversation with Ennis, about 20 to 30 feet away from him. (Cuviello Depo., pgs. 88: 16-25, 89:1.) At the point of the alleged conversation with Ennis, Plaintiff did not move away from the videographers in order to have his "private" communication. (Cuviello Depo., pg. 89: 2-5.) While Ennis was engaged in videotaping at the time of the conversation, Plaintiff did not ask Ennis to turn off his video camera. (Cuviello Depo., pgs. 95: 7-9, 121: 17-20.)

The purported conversation with Ennis lasted less than one minute. (Cuviello Depo., pg. 89: 6-7.) Plaintiff does not remember what either he or Ennis said during the conversation. (Cuviello Depo., pg. 89: 12-17.) Although Plaintiff claims that the conversation was "private and personal," he cannot remember the substance of the communication. (Cuviello Depo., pg. 89: 18-25.) Plaintiff does not actually recall that Ennis said anything during the conversation. (Cuviello Depo., pg. 90: 16-18.)

Plaintiff testified that when he first became aware of Taylor, the videographer was within a foot right behind him. (Cuviello Depo., pg. 91: 7-15.) Plaintiff turned to the videographer and started yelling at Taylor, using a stream of profanities. (Cuviello Depo., pgs. 91: 19-25, 94: 13-15.) [11]

There were two video recorders that were on and operating at the time of the alleged private conversation. As noted above, the video recorder operated by Ennis was on during the conversation. Plaintiff has listened to the Ennis recording, and he cannot recall hearing his conversation with Ennis recorded on that device. (Cuviello Depo., pgs. 95: 7-21, 105: 2-11.)

The second recording device was operated by Taylor. (Taylor Decl. Ex. A.) Plaintiff testified that he reviewed that recording prior to his deposition, and while he could hear voices on the tape that he believed constituted the conversation he had with Ennis, he "did not hear the conversation, the words, clearly," so he did not "recall what the conversation was." (Cuviello

---

[11] The Taylor videotape and recording that is at issue in this claim is attached as Exhibit "A" to the accompanying Decl. of Geoff Taylor.

Document Prepared
on Recycled Paper

Depo., pg. 106: 9-22.)

At Plaintiff's deposition the Taylor videotape was played several times. After the first play, Plaintiff testified he heard voices on the tape, one of which he thought was his. (Cuviello Depo., pg. 108: 2-10.) After the second play, Plaintiff testified that while "it's hard for me to tell," one of the voices "sounds like me," another voice was Ennis, but he could not make out any of the words that were spoken, or "distinguish" what he was saying. (Cuviello Depo., pgs. 110: 11-25, 111, lines 1-8, 23-24.) Upon further inquiry, Plaintiff testified that he was not absolutely certain any of the voices on the tape were his. (Cuviello Depo., pg. 112: 19-21.) After hearing the Taylor videotape for yet a third time, Plaintiff could still not determine what was said on the recording. (Cuviello Depo., pg. 113: 10-13.) As Plaintiff conceded, no one can tell from reviewing the Taylor tape what he said. (Cuviello Depo., pg. 128: 16-22.)

Plaintiff's inability to determine what, if anything, he said to Ennis that was recorded on the Taylor videotape is not surprising. There is no discernable conversation between Plaintiff and Ennis, because Taylor was not close enough to Plaintiff to record his conversation. If, as Plaintiff claims, Taylor was within one (1) foot of him when the recording was made, then given the nature of the audio equipment that Taylor was using, he would have captured at least a portion of Plaintiff's conversation with Ennis that would have been perceptible on the recording. (Declaration of Geoff Taylor ("Taylor Decl.") ¶10.) But, as testified to by Plaintiff, and confirmed by Taylor, there is no perceptible recording of any conversation in which Plaintiff was a participant. (Taylor Decl. ¶11.)

There is yet another unassailable reason why it is clear that Taylor was not right behind Plaintiff, within a foot, recording Plaintiff's conversation with Ennis. On August 19, 2012, Taylor was using a digital camera with a zoom lens. (Taylor Decl. ¶7.) The visual recording on August 12, 2012, taken simultaneously with the audio recording of the purported conversation between Plaintiff and Ennis, shows two heads in the picture frames, Plaintiff and another individual, Ennis. (Taylor Decl. ¶5.) However, given the nature and capabilities of Taylor's equipment, even on the lowest zoom setting for his camera, it would have been impossible for Taylor to be within a foot of Plaintiff at the time of the alleged audio recording and also obtain a

DOCUMENT PREPARED
ON RECYCLED PAPER

visual recording of the two heads.  In other words, in order to obtain a recording of the two heads in the video, Taylor must have been at least several feet away from Plaintiff. ((Taylor Decl. ¶¶ 8-9.)  Plaintiff has no evidence to contest the equipment used that day or its functionality.  The technology is what it is, and it affirmatively disproves Plaintiff's allegations about what occurred that day.

Finally, Plaintiff testified that although he believes his right to privacy was violated by the Taylor videotape, he conceded that he has no knowledge that any information contained from his "private" conversation with Ennis was publicized or used in any way to his detriment. (Cuviello Depo., pg. 127: 5-13.)  Neither did Plaintiff suffer any physical injury or damage to his property as a result of the Taylor videotape. (Cuviello Depo., pg. 129: 15-20.)

Thus, the undisputed facts establish that: 1) there was no perceptible recording of the purported conversation between Plaintiff and Ennis, and 2) there is no way of establishing that the conversation was, indeed, private, as Plaintiff has no recollection of the content and substance of his conversation.

## III.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(A); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is considered material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if there is sufficient evidence for a reasonable trier of fact to decide in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*at 249-50 (internal citations omitted).

If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250.  If the non-moving party fails to make the requisite showing, "the moving party is entitled to judgment as a matter of law." *Id.*; *Bolbol v. Feld Entm't, Inc.,* 2013 U.S. Dist. Lexis 9800 at *11-12 (N. D. Cal. 2013).

DOCUMENT PREPARED
ON RECYCLED PAPER

**IV.    LEGAL ARGUMENT**

**A.    Plaintiff's Claims Related to the Fresno Incident Should Be Dismissed**

Plaintiff asserts three (3) causes of action in the TAC that concern the Fresno Incident: Assault; Violation of California Civil Code §51.7 – The Ralph Act; and Violation of California Civil Code §52.1 - The Bane Act.

In order to prevail on an assault claim, "the plaintiff must establish that: (1) the defendant threatened to touch the plaintiff in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Avina v. United States,* 681 F.3d 1127, 1130 (9th Cir. 2012).

There are four essential elements that must be established to prevail in a claim under the Ralph Act: (1) the defendant committed or threatened violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's political affiliation; (3) plaintiff was harmed; and (4) defendant's conduct was a substantial factor in causing plaintiff's harm. See *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2004) (citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007)).  In this context, "violence" involves some physical destructive act. *OSJ PEP Tenn. LLC v. Harris*, No. CV 14-03741 DDP Manx, 2014 WL 4988070, at *5 (C.D. Cal. Oct. 7, 2014).

Finally, to prevail on a Bane Act claim, a plaintiff must show (1) a defendant interfered with a plaintiff's constitutional or statutory rights; and (2) that such interference was accompanied by actual or attempt threats, intimidation or coercion. *Venegas v. Cnty of L.A.*, 32 Cal. 4th 820, 843 (2004).

As noted above, the Court is already familiar with the Fresno Incident, having summarily dismissed claims brought by Ennis on these same essential facts.[12]  Because the Court found that

---

[12] The only difference is that Ennis' camera was struck by one of the wooden sticks, and the other stick struck him on the shoulder. (RJN, Ex. 1, pg. 5.)  Here, none of the thrown items struck Plaintiff or his property, rendering Plaintiff's claim even weaker than those made by Ennis which were summarily dismissed.

there was no evidence of violence or intimidation in connection with this incident, Ennis' Ralph and Bane Act claims failed. (RJN, Ex. 1, pgs. 17, 29 and 30.) There is no reason to deviate from that ruling in this case. The undisputed facts establish that FEI did not threaten to touch Plaintiff in a harmful or offensive manner, there was no violence or threats of violence visited upon Plaintiff through this incident, and there were no actual or attempted threats, intimidation or coercion that interfered with Plaintiff's constitutional or statutory rights. Accordingly, all of Plaintiff's claims related to the Fresno Incident should be dismissed.

### B.  Plaintiff's Claims Related to the Oakland Incident Should be Dismissed

Plaintiff asserts four (4) claims in connection with the Oakland Incident: 1) Battery; 2) Violation of the Ralph Act; 3) Violation of the Bane Act; and 4) Violation of City of Oakland ordinances. These claims, taken together or separately, should also be summarily dismissed.

To prevail on a claim for battery, a plaintiff must establish: "(1) the defendant touched the plaintiff or caused the Plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by Defendants' conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching." *Avina*, 681 F.3d at 1130-31. "[A] touching . . . for a legitimate purpose or one unavoidably made is no wrong." *Barouh v. Haberman*, 26 Cal. App. 4th 40, 46 n. 5 (1994).

Plaintiff's own testimony, combined with the videotape of the Oakland Incident, establish that no battery was committed against Plaintiff. Taking first, in order of occurrence, the two instances where Plaintiff purportedly came in contact with the rope being held by the animal walk escorts, it is clear that no battery occurred. First, the videotape shows: 1) whatever contact Plaintiff may have had with the rope, it was de minimus and trivial, and 2) if anyone actually instigated contact with the rope, it was Plaintiff. (See Taylor Decl., Ex. A, excerpts 7:26 to 7:56, 13:15 to 13.25.) Second, as even Plaintiff admits, the ropes serve the legitimate interest of creating a buffer zone between members of the public and the animals, and it was that purpose that was served when Plaintiff encountered the rope during the animal walk. Third, even if there was contact between the Plaintiff and the rope initiated by FEI, it was unavoidable given the

DOCUMENT PREPARED
ON RECYCLED PAPER

emergence of the guardrail and the absence of a paved sidewalk at the moments of contact. Stated differently, the rope touching occurred, if at all, as the unavoidable consequence of the funneling effect that occurred at that particular portion of the animal walk. As Plaintiff admitted at deposition, there were no problematic encounters during the vast proportion of the time of the animal walk when there was a paved sidewalk. The entire length of the videotape of the animal walk confirms this fact. Finally, Plaintiff testified that he suffered no physical harm resulting from his "touching" of the ropes, and his videotaping activity was not impaired. Under these facts, Plaintiff cannot establish that a reasonable person would have been offended by this occurrence.

Plaintiff's encounter with Del Moral, the other alleged encounter during the Oakland animal walk, also fails to establish the basis for Plaintiff's battery claim for the simple reason that it was Plaintiff, not Del Moral, that initiated the contact. As can be seen from the videotape, upon hearing his partner Bolbol's exclamations, Plaintiff moved back towards where Bolbol was standing and banged against Del Moral. (See Taylor Decl., Ex. B, excerpts 13:30 to 14:10, Mason Decl. Ex. G, excerpts 16:45 to 17:00.) If any battery occurred here, it was Plaintiff's physical attack against Del Moral. Further, Plaintiff admitted that he suffered no physical harm from this incident.

Plaintiff's Ralph Act claim based upon the Oakland Incident also fails for several independent reasons. First, there is no evidence that the Defendants committed or threatened violent acts against Plaintiff. In this context, violence involves some physical, destructive act. *OSJ PEP, supra* at *5. Here, the momentary, trivial touching of the rope against Plaintiff cannot be considered a "violent" act. Even if the touching of the rope against Plaintiff was initiated by the Defendants (and it was not), the videotape shows that no violent act occurred. Plaintiff's lack of any physical harm from his encounter with the rope serves to confirm that fact. Further, Plaintiff's encounter with Del Moral cannot serve as a basis for a Ralph Act claim, as it was Plaintiff, not Del Moral, that instigated this occurrence.

In any event, Plaintiff's Ralph Act claim must fail as he, by his own admission, has suffered no harm resulting from the Defendants' conduct. Finally, Plaintiff must establish that

DOCUMENT PREPARED
ON RECYCLED PAPER

the violent acts or threats made by the Defendants were motivated by Defendants' perception of Plaintiff's political affiliation. However, the events of August 12, 2012, establish just the opposite. It was not Plaintiff's political affiliation that motivated the interaction between Plaintiff and the Defendants during the animal walk. Rather, whatever difficulties arose, they were attributable to either Plaintiff's own conduct or the change in sidewalk conditions that brought the participants closer together as the elephants were walking down the street. These encounters were not spontaneous outbreaks of hostility due to Plaintiff's political views.

As noted above, in order to prevail on his Bane Act claim, Plaintiff must first establish that the Defendants interfered with Plaintiff's constitutional or statutory rights. Plaintiff attempts to fulfill this requirement by reference to a list of statutes which Plaintiff claims create rights that have allegedly been violated by Defendants' conduct. Those statutes are: 1) Calif. Penal Code §647c (right of free movement on street, sidewalk or other public place); 2) California Civil Code §1708 (right to be free from infringement of rights); 3) Civil Code §51.7 (Ralph Act); 4) Civil Code §43 (right of protection against bodily restraint); and 5) Penal Code §240 (right to be free from assault and battery). The Court, however, previously ruled in the *Campbell* Summary Judgment Order that several of these statutes cannot serve as a predicate violation of rights for the purpose of the Bane Act. (RJN, Ex. A, pgs 22-29).

In connection with Penal Code §647c, the Court held that there is no authority that a violation of this criminal statute, or any other criminal statute, may serve as a basis for establishing Bane Act liability. Because there is no civil cause of action under §647, the Court declined the invitation to invent a new statutory right under this Penal Code provision. The Court also rejected Civil Code §1708 as a basis for the Bane Act, observing that there is no private right of action under this statute and, in any event, there is  no authority that holds that Civil Code §1708 can serve as the basis for a violation of the Bane Act. The Court also held in *Campbell* that a violation of Civil Code §51.7 (the Ralph Act) cannot serve a predicate for violation of the Bane Act, stating that there is no authority to support that proposition, and in fact, existing authority "suggests the opposite," citing *Bolbol v. Feld Entm't, Inc.* (Bolbol II), No. C 11-5539 PSG, 2013 WL 257133, at *11 (N.D. Cal Jan. 23, 2013).

DOCUMENT PREPARED
ON RECYCLED PAPER

1    The Court did not address the ability of Penal Code §240 to serve as a predicate for a

2    Bane Act violation, but its analysis of Penal Code §647 has direct application to §240.  Because

3    Penal Code §240 does not have a civil right of action, and it does not relate to something a person

4    has the right to do under law (*See Austin B*, 149 Cal. App. 4th at 883), it also cannot be utilized to

5    "invent" a new statutory right for purposes of the Bane Act.

6    The Court did hold in *Campbell* that a violation of Civil Code §43 can be a basis for a

7    violation of the Bane Act.  However, the analysis does stop there, for it is Plaintiff's burden to

8    prove that a violation of his rights under Civil Code §43 was accomplished by actual or attempted

9    threats, intimidation, or coercion.  However, the undisputed factual record establishes that

10   Plaintiff's rights were not interfered with by Defendants' actual or threatened conduct.  To the

11   contrary, it was Plaintiff who engaged in the threatening, intimidating, and coercive conduct at

12   the 2012 Oakland animal walk, not the Defendants.  And, in any event, Plaintiff did not suffer any

13   physical injury or damage to his property resulting from the Oakland Incident.  In the absence of

14   any harm, Plaintiff's Bane Act claim must also fail.

15   The final claim associated with the Oakland Incident is Plaintiff's claim that FEI did not

16   have a permit for the August 7, 2012, animal walk.  However, this assertion is simply wrong.  FEI

17   did secure a permit from the Oakland Police Department ("OPD") for the animal walk.  The

18   permit application was submitted by FEI on the form supplied by the OPD, the application was

19   approved by the OPD, and the OPD provided escort and traffic control services for the animal

20   walk.  Based upon these undisputed facts, Plaintiff's separate cause of action for an alleged

21   violation of the City of Oakland ordinances must be dismissed.[13]

22   **C.    Plaintiff's Claim Related to the San Jose Incident Should be Dismissed**

23   Plaintiff asserts a single claim involving the San Jose Incident: violation of California

24   Penal Code Section 632(a) (Fifth Cause of Action).  This claim must also be summarily dismissed

25   for two separate reasons: 1) there was no recording of the contents of any private

26

27   _____

     [13] Even if Plaintiff could establish that FEI did not have a permit for the Oakland animal walk
28   (which, obviously, he cannot), Plaintiff could not come up with a reason why he suffered any
     harm from the lack of a permit. (Cuviello Depo., pg. 37: 5-25.)

communications; and 2) given the circumstances surrounding the conversation, including that Plaintiff cannot recall the content of his communication with Ennis, the conversation is not entitled to protection as a confidential communication under the statute.

To succeed on a claim under Section 632(a), Plaintiff must prove FEI: "(1) intentionally, (2) without the consent of all the parties, (3) recorded by means of any electronic amplifying or recording device, (4) a confidential communication." *Thomas v. Costco Wholesale Corp.*, 2014 WL 819396, at *11 (C.D. Cal. 2014) (citing Cal. Penal Code § 632(a)); see also Judicial Council of California Civil Jury Instructions ("CACI") No. 1809. The recordings prohibited by Section 632(a) are "recordings of the contents of audible . . . communication." *People v. Drennan*, 84 Cal. App. 4th 1349, 1357 (2000).

In *Drennan*, the court reversed an eavesdropping conviction of a school superintendent who had installed a hidden video camera in the office of a school principal. *Id.* at 1351-52. The hidden camera did not capture sound. *Ibid.* Interpreting Section 632(a), the court reasoned that "the Legislature intended to prohibit the recording of oral or telegraphic communications . . . not the photographing of two or more people carrying on a conversation." *Id.* at 1358. Video that "does not capture the communication itself, only evidence that a communication has occurred" is not eavesdropping because "[i]t does not amount to an intrusion on one's thoughts, ideas, or knowledge." *Ibid.* "The statute protects the **content[s]** of the communication from being recorded, not the non-contentbased conduct coincident to the communication." *Id.* at 1356 (emphasis added). The court found that because the hidden camera recording did not capture any audio, it did not fall within the ambit of the eavesdropping statute. *Id.* at 1359.

*Drennen* has direct and dispositive application to Plaintiff's claim of illegal eavesdropping. There was no recording of the contents of Plaintiff's conversation with Ennis on August 19, 2012. Despite listening to the recording multiple times, both before and at his deposition, Plaintiff admitted that he cannot make out what he said to Ennis, or what Ennis said to him. Indeed, Plaintiff conceded that no one can tell what was said during the conversation with Ennis from a review of the recording. That conclusion is substantiated from Taylor's review of the videotape and, of course, a review of the videotape itself submitted in connection with this

DOCUMENT PREPARED ON RECYCLED PAPER

motion. At most, Plaintiff believes he can make out the sound of his voice on the videotape, if not the words that are spoken, but he is not absolutely sure it is even his own voice. Neither is Plaintiff's eavesdropping case assisted by the fact he cannot remember what was said during his conversation with Ennis.

Thus, there was **no** recording of Plaintiff's "thoughts, ideas, or knowledge." *Drennan*, 84 Cal. App. 4th 1349 at 1358. Accordingly, no issue of material fact remains for trial on this claim because the recording complained of by Plaintiff is not a "recording of a confidential communication" within the meaning of the eavesdropping statue. The video at issue is merely a recording of "non-contentbased conduct coincident to the communication," not of the content of the communication itself. See *Id.* at 1356. Without a recording of the content of his conversation with Ennis, Plaintiff cannot satisfy this essential element of his claim under Section 632(a), and Defendants are entitled to summary judgment as a matter of law.[14]

The facts that there is no perceptible recording of the conversation between Plaintiff and Ennis and that Plaintiff cannot remember the substance of the conversation, combined with other factors addressed herein, support the independent conclusion that the conversation with Ennis was not confidential. It is undisputed that: 1) Plaintiff and Ennis were on the public street engaging in the open activity of videotaping at the time of the alleged illegal recording; 2) Plaintiff was aware that the FEI videographers were taping his activities within 20 to 30 feet from where he was; 3) Plaintiff did not move away from the videographers in order to have his conversation with Ennis; 4) Plaintiff was aware that Ennis's video recorder was on during the conversation, yet he did not instruct Ennis to turn his camera off so that they could speak; and 5) Plaintiff cannot recall the substance of his conversation.

A conversation is deemed confidential under Section 632 if a party has a reasonable expectation of privacy in the communication. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774-75 (2002). However, whether a communication is confidential is not based upon a party's subjective

---

[14] In its ruling on Defendants' previous motion to dismiss, the Court dismissed Plaintiff's eavesdropping claim (with leave to amend) because Plaintiff failed to allege "a recording" as required by Section 632(a). (ECF Docket No. 37, pg. 9.)

DOCUMENT PREPARED ON RECYCLED PAPER

1   expectation, but upon an "objectively reasonable" expectation. *Lieberman v. KCOP Television,*
2   *Inc.*, 110 Cal. App. 4th 156, 168 (2003).

3       The content of the conversation is a factor to consider in determining if a party has a
4   reasonable expectation of privacy for that communication. *Roberts v. Wyndham Int'l.,* 2012 WL
5   6001459, at *6 (N.D. Cal., Nov. 30, 2012); see also *Kearney v. Salomon Smith Barney*, 39 Cal. 4th
6   95, 118 (2006); *Weiner v. ARS Nat'l. Servs*, 887 F. Supp. 2d 1029, 1033 (S.D. Cal. 2012); *Frio v.*
7   *Super. Ct.*, 203 Cal. App. 3d 1480, 1489 (1988).  In this instance, Plaintiff cannot even remember
8   what was said in his conversation with Ennis.  It is, to say the least, anomalous that Plaintiff is
9   claiming confidential status for a conversation he cannot recall.  When that fact is combined with
10  the other undisputed facts stated above pertaining to the conversation between Plaintiff and Ennis,
11  it is clear that Plaintiff cannot meet his burden to establish there was a recording of a
12  "confidential" communication in violation of Section 632.

13      In sum, Plaintiff's claim for illegal eavesdropping fails for two independent reasons.
14  First, there was no perceptible audio recording of Plaintiff's conversation with Ennis.  Second,
15  Plaintiff cannot establish through objective evidence that the communication with Ennis was
16  confidential.  Accordingly, Plaintiff's claim relating to the San Jose Incident must be dismissed.

17  **V.    PLAINTIFF'S DISCOVERY MISCONDUCT COMPELS THE GRANTING OF**
18  **SUMMARY JUDGMENT**

19      While Defendants do not base their request for summary judgment specifically upon
20  Plaintiff's continual discovery misconduct, Defendants urge that the Court consider that
21  misconduct (detailed below) in the context of this proceeding.  See *Payne v. Exxon Corp.*, 121
22  F.3d 503, 508 (9th Cir. 1997.) (Court may consider discovery misconduct in weighing a motion to
23  dismiss.)  Plaintiff should not be able to take advantage of his gamesmanship in discovery to
24  avoid summary judgment being granted against him.

25      Plaintiff has done everything possible to thwart Defendants' legitimate interest to secure
26  discovery in this case.  When Plaintiff refused to produce documents and other materials (e.g.
27  videotapes) in response to discovery served in April 2014, Defendants brought a motion to
28  compel production. (ECF Docket No. 69-72.)  That motion resulted in a ruling issued by

DOCUMENT PREPARED
ON RECYCLED PAPER

- 18 -

Magistrate Judge Grewal on December 2, 2014, ordering Plaintiff to comply with his discovery obligations. ("Discovery Order," ECF Docket Nos. 86 and 90.) The Discovery Order directed Plaintiff to produce documents, including inter alia, communications between HTE members and other animal activist groups or individuals pertaining to FEI, and public and private Facebook postings relating to FEI. Rather, than comply with the Discovery Order, Plaintiff appealed that ruling to this Court. That appeal was denied immediately. (ECF Docket No. 93.) Plaintiff still did not comply with the Discovery Order, instead filing a Writ of Mandamus with the Ninth Circuit. While Plaintiff's writ was pending, he filed a motion to stay enforcement of the Discovery Order with this Court. That motion was denied. (ECF Docket No. 123.) Plaintiff still did not comply with the Discovery Order. On February 9, 2015, the Ninth Circuit denied Plaintiff's petition. (ECF Docket No. 125.) Finally, on February 13, 2015, over ten (10) months after the original discovery requests were served, and two (2) months after the Discovery Order was issued, Plaintiff purported to comply with his discovery obligations and the specific Orders of this Court. And, amazingly, Plaintiff is still willfully failing to comply.

Plaintiff's latest production, made only after the denial of his writ, purports to include communications between HTE and other animal activists concerning their plans and activities to protest FEI and other circuses. Yet, in the production he made, Plaintiff has unilaterally and without any court approval or agreement between the parties, elected to redact all information from the produced materials that might establish the identity of those with whom Plaintiff and his colleagues have been in communication. (Mason Decl. ¶9.) Thus, even though Plaintiff has been ordered to produce the documents in their entirety, without redactions concerning identification of individuals involved in the communications, Plaintiff has arrogantly disobeyed the Court's orders again by producing incomplete documents that, as produced, conceal potentially relevant information.

The prejudice to Defendants resulting from Plaintiff's delaying tactics and outright disobedience of the Discovery Order is apparent. Through his intentional misconduct Plaintiff has prevented Defendants from using information that should have been produced in a timely fashion (e.g., the identity of potential third party witnesses gleaned from communications with

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff and other HTE members) that would have assisted Defendants in the preparation of this motion, and, if necessary, preparation for trial. Yet, because Plaintiff believes he is the arbiter as to which rules apply and when compliance is required, Defendants have been denied the opportunity to defend themselves in the manner contemplated by the Federal Rules. And, with the most recent production of redacted documents, Plaintiff's disobedience continues. These egregious circumstances must be considered in the context of the determination of this dispositive motion.

## VI.    <u>CONCLUSION</u>

At this juncture in the proceedings, Plaintiff is required to come forward with evidence to keep his claims alive legally. However, the factual record establishes that Plaintiff lacks evidence on essential elements of each of his claims. Accordingly, Plaintiff's case should now come to an end and summary judgment be granted in favor of the Defendants.

PETER H. MASON
TODD M. SORRELL
MICHELLE L. MELLO
**NORTON ROSE FULBRIGHT US LLP**

and

RUBY H. KAZI
TYLER ATKINSON
**McMANIS FAULKNER**

Dated:  February 19, 2015

By____/s/ Peter H. Mason_____
PETER H. MASON
Attorneys for Defendants
FELD ENTERTAINMENT INC. AND
LORENZO DEL MORAL

DOCUMENT PREPARED
ON RECYCLED PAPER